UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RICHARD WILLIAM DUVAL,

      Plaintiff,

v.                                    Case No:   6:14-cv-213-Orl-18TBS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION

      Plaintiff Richard William Duval brings this action pursuant to the Social Security

Act ("Act"), as amended 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a

final decision of the Commissioner of the Social Security Administration ("Commissioner")

denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under the Act.   Plaintiff argues that the administrative law judge ("ALJ")

erred by: (1) failing to properly weigh the opinions of his treating doctors and other health

care providers; (2) finding him not fully credible; and (3) relying on vocational expert

testimony elicited in response to a hypothetical that did not incorporate all of his

impairments.   (Doc. 16).   Based upon a review of the administrative record and the

pleadings and memoranda submitted by the parties, and for the reasons that follow, I

respectfully recommend that the Commissioner's final decision be reversed and

remanded for further proceedings consistent with the findings in this report, pursuant to

sentence four of 42 U.S.C. § 405(g).

## I. Background

      Plaintiff, a former fork lift operator, welder, construction worker, and warehouse

worker with a GED, protectively filed applications for SSI and DIB on October 5, 2010.

(Tr. 201, 209-10, 373).   In his applications, he alleged that he was disabled beginning

March 1, 2010.   (Tr. 201).   After his applications were denied initially and on

reconsideration, he requested a hearing which was held on June 7, 2011.   (Tr. 12, 219-

52, 262-81).   On May 23, 2012, the ALJ issued his decision denying Plaintiff's

applications for benefits (Tr. 201-11).

The ALJ employed the five step sequential evaluation process which appears at 20

C.F.R. §§ 404.1520 and 416.920 to evaluate Plaintiff's claim.[1]   At step one, the ALJ

found that Plaintiff had not engaged in substantial gainful activity since his alleged onset

date.   At step two, the ALJ concluded that Plaintiff was severely impaired by epilepsy

seizure disorder, distal radioulnar joint arthrosis right wrist, and depression.   (Tr. 203).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination

of impairments that met or equaled a listed impairment.   (Tr. 204).

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

perform light work subject to the following limitations: he cannot climb ladders or scaffolds

and should avoid exposure to moving parts, hazardous machinery, and unprotected

heights; he can perform only simple, routine, and repetitive tasks, and he can have up to

occasional interaction with co-workers and the public.   (Tr. 205-09).   Based on Plaintiff's

RFC, the ALJ decided at step four that Plaintiff could not perform his past relevant work.

---

[1] The five steps are summarized as follows:
1. Is the claimant performing substantial gainful activity?
2. Does the claimant have a severe impairment?
3. Does the claimant have a severe impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?
4. Can the claimant perform past relevant work?
5. Based on the claimant's age, education, and work experience, can the claimant perform other work of the sort found in the national economy?

(Tr. 209).   But, at step five the ALJ determined, based on testimony from a vocational expert, that Plaintiff could perform other work that exists in significant numbers in the national economy.   (Tr. 210-11).   Based on these findings, the ALJ found that Plaintiff was not disabled.   (Tr. 211).

After the ALJ denied benefits, Plaintiff sought review by the Appeals Council, submitting with his request for review hundreds of additional pages of medical records. (Tr. 14-192, 196, 855-63).   The Appeals Council denied the request for review (Tr. 7-10), and this appeal followed.

## II. Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence.   Crawford v. Commissioner, 363 F.3d 1155, 1158 (11th Cir. 2004).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla but less than a preponderance.   It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion."   Winschel v. Commissioner, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]"   Id.   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

There is a presumption in favor of the ALJ's findings of fact, but the presumption does not attach to the ALJ's conclusions of law.   Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988) (per curiam).   The Court will reverse a final decision if the ALJ incorrectly applies the law or fails to provide sufficient reasoning for the Court to determine whether the ALJ properly applied the law.   Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1992).   When it reviews the Commissioner's final decision, the Court is authorized to "enter ... a judgment affirming, modifying, or reversing the decision ... with or without remanding the cause for a hearing."   42 U.S.C. § 405(g).

### III. Discussion

At the administrative hearing in this case, Plaintiff testified that he has limited use of his right hand and arm.   (Tr. 229).   He also testified that in the two months preceding the hearing he had four seizures, each lasting two to four minutes during which he shakes violently and bites his tongue.   (Tr. 231).   If Plaintiff is standing when he has a seizure he drops to the floor.   (Tr. 232).   It takes him approximately 20 minutes to regain full consciousness following a seizure and he is "pretty wiped out for a couple of hours afterward."   (Id.).   Plaintiff also testified to experiencing two bad headaches per month. (Tr. 233).   In describing his bad headaches, Plaintiff reported a "throbbing sensation" and "tears rolling out of my eyes."   (Id.).   When he has these headaches he needs peace, quiet, and a dark room where he will stay for 2 ½ to 3 hours.   (Id.).   Finally, Plaintiff reported experiencing depression and episodes of anxiety lasting 10-15 minutes, every other day.   (Tr. 240, 828).

The Eleventh Circuit has adopted a two-pronged standard for examining a claimant's subjective complaints.   First, the claimant must provide evidence of an underlying condition.   Next, the claimant must submit either objective medical evidence confirming the alleged severity of the pain or other symptoms, or show that the objectively determined medical condition can reasonably be expected to give rise to the symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).   See also 20 C.F.R. §§ 404.1529(b), 416.929(b) (claimant must show the existence of medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms).

Once the claimant demonstrates the existence of a medically determinable impairment that could reasonably be expected to produce the pain or other symptom alleged, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms" in order to "determine how [those] symptoms limit [the claimant's] capacity for work."   20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).   The ALJ must "consider all of the available evidence, including [the claimant's] history, the signs and laboratory findings, and statements from [the claimant], [his] treating or non-treating source, or other persons about how [the claimant's] symptoms affect [him]."   Id.   If the objective medical evidence by itself supports the claimant's allegations about the intensity and persistence of subjective symptoms, the ALJ must accept those allegations as true.   Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *1.   But, if the claimant's "statements about pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must ... make a finding on the credibility of the [claimant's] statements about symptoms and their functional effects."   Id. at *4.

Once the claimant has shown the existence of an impairment that could reasonably be expected to produce the alleged pain or other symptoms, the ALJ may not dismiss the claimant's testimony regarding the intensity and persistence of those symptoms "solely because the available objective medical evidence does not substantiate" those statements.   20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).   "Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the ALJ must consider all relevant information, and not just objective medical evidence, in assessing the claimant's credibility.   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).   A claimant's symptoms "will be determined to diminish [the claimant's] capacity for basic work activity to the extent that [the claimant's] alleged functional limitations and restrictions due to [those] symptoms ... can reasonably be accepted as consistent with the objective medical evidence and other evidence."   20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).   Provided the ALJ stays within these bounds, "credibility determinations are the province of the ALJ."   Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).

If the ALJ discredits a claimant's testimony about his symptoms, the ALJ must articulate adequate reasons for doing so.   Wilson, 284 F.3d at 1225.   Here, the ALJ decided that Plaintiff's "medically determinable impairments could reasonably be expected to cause the ... symptoms" Plaintiff alleged, but that Plaintiff's statements about the "intensity, persistence and limiting effects" of his impairments were "not credible to the extent they are inconsistent with the above residual functional capacity assessment and are not supported by the objective medical evidence."   (Tr. 206).   The only reason the ALJ gave for discounting Plaintiff's credibility is that he found no support for Plaintiff's testimony that he is very limited with his hands.   (Id.).   The ALJ failed to discuss, let

- 6 -

alone specify how much weight he gave Plaintiff's testimony about his other conditions including his seizures, headaches, anxiety, and depression.

The ALJ's minimal credibility finding precludes meaningful judicial review.   The vague boilerplate finding that Plaintiff's allegations are "not credible to the extent they are inconsistent with" the ALJ's RFC assessment, while not itself grounds for reversal, see, e.g., McGilvery v. Colvin, No. 8:12-cv-01933-T-27EAJ, 2013 WL 5408450, at *12 (M.D. Fla. Sept. 25, 2010), tells the Court almost nothing about the weight the ALJ gave Plaintiff's self-report of his symptoms, or why the ALJ reached his conclusion.   Without knowing which of Plaintiff's statements about his symptoms the ALJ determined to be inconsistent with the RFC assessment, and why the ALJ rejected those statements, the Court cannot determine whether substantial evidence supports the ALJ's decision. Sometimes it is evident from an ALJ's opinion which of the claimant's statements were rejected and why, but that is not true in this case.   While the ALJ specifically addressed Plaintiff's alleged problems with his hands, the ALJ did not evaluate Plaintiff's statements about any of his other conditions.

The addition of the reference to objective symptoms to the boilerplate language employed by the ALJ adds little to the ALJ's credibility determination.   The ALJ's finding that Plaintiff's statements are "not credible to the extent they are ... not supported by the objective medical evidence" is useful to the Court only to the extent the ALJ identifies which of Plaintiff's statements he regards as unsupported by objective evidence.   It would also have been helpful if the ALJ had identified the medical evidence he was referring to.   Without this information the ALJ's decision suggests that he summarily and indiscriminately rejected all of Plaintiff's statements about his symptoms that lacked objective support simply because they lacked objective support, which is not permissible

under the regulations.   20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).   While the ALJ might have been justified in relying on objective evidence to discount Plaintiff's testimony about the use of his hands (Tr. 206), he could not rely on objective evidence to discredit Plaintiff's testimony about his migraine headaches[2] or mental health symptoms.   Cf. Thompson v. Barnhart, 493 F. Supp. 2d 1206, 1214–17 (S.D. Ala. 2007) (emphasizing the need for ALJs to go "beyond objective medical evidence" in order to properly evaluate claimants who suffer from chronic migraines).

The Commissioner argues that the ALJ's credibility finding "goes to the individual, not to specific impairments," and that the ALJ's rejection of Plaintiff's testimony that he had limited use of his hands is in turn, a reason for rejecting Plaintiff's statements about his other symptoms.   (Doc. 17, p. 16).   Plainly, an ALJ may employ evidence contradicting a claimant's statement not only to disprove that particular statement, but also to attack the claimant's credibility more generally.   But the ALJ never made a general credibility finding as to Plaintiff.   The ALJ only discounted Plaintiff's credibility concerning the use of his hands.   Importantly, the ALJ never said Plaintiff's testimony about the use of his hands was inconsistent with or contradicted by other evidence.   The ALJ only said that Plaintiff's testimony lacked "support" (i.e. corroboration).   (R. 206).   A finding that a claimant's testimony about one symptom lacks "support" in the record is not an "explicit and adequate" reason for a blanket rejection of the claimant's statements concerning his other symptoms "to the extent that they are inconsistent with" the ALJ's RFC assessment.

---

[2] Migraine headaches have some objective signs, for example vomiting, but these signs are only observable during an attack.

The Commissioner attempts to salvage the ALJ's credibility finding by arguing that the ALJ used inconsistencies between Plaintiff's testimony and Dr. Sadek's treatment notes regarding Plaintiff's marijuana use to impeach Plaintiff's credibility.[3]   The ALJ made no such finding; nor could he, as the treatment notes the Commissioner cites in her brief post-date the ALJ's decision.[4]   (Doc. 17, p. 16 (citing Tr. 8, 26, 30, 31)).   Here is the only reference the ALJ made to marijuana use in his decision:

> After the hearing on April 19, 2012, the undersigned granted the claimant 15 days to submit two items of evidence.   First, it was expected that some evidence would demonstrate that the claimant had abstained from the use of marijuana.   Instead, the undersigned received a conclusory statement, dated April 24, 2012, from Dr. Sadek saying that the claimant is not currently using illegal drugs.   Dr. Sadek is the same doctor who, throughout the record, has submitted letters in support of the claimant's disability application stating that the claimant is severely impaired; however, his progress notes do not necessarily support the severity stated in his letters.

(Tr. 206).

Contrary to this statement, what the ALJ asked at the hearing was "[s]o tell me again, you want to get a statement from a doctor, or a treating physician with regard to the claimant's use of marijuana?"   (Tr. 251).   It is clear from the hearing transcript that the ALJ's expectation of objective evidence was unjustified and that he received exactly what Plaintiff's attorney promised–a statement from Plaintiff's neurologist addressing Plaintiff's lack of drug use.   (Tr. 251).   While the ALJ offers innuendo, he makes no

---

[3]  The Commissioner's brief refers on two occasions to "objective medical evidence" of Plaintiff's marijuana use.   While treatment notes refer to marijuana use, there is no "objective medical evidence"–i.e. medical signs or laboratory findings–of marijuana use in the record, only second-hand statements.
     The only evidence of recent alcohol or marijuana use are a series of statements in Dr. Sadek's treatment notes that Plaintiff drinks "about 3" beers per day and "uses marijuana."   (Tr. 26, 31, 35-36, 589, 657, 660, 816, 826).   Puzzlingly, some of these notes also contain statements that Plaintiff was not using alcohol.   (See Tr. 589, 660).

[4]  The Commissioner's brief cites treatment notes dated November 5, 2012 and February 13, 2013.   (Tr. 30-38).   The ALJ issued his decision in May 2012.

actual findings about Plaintiff's drug use, whether bearing on Plaintiff's medical condition, credibility, or anything else.   The Court reviews the ALJ's written findings, not insinuations and unstated suggestions.   See Auffant v. Commissioner, No. 1:05-CV-328(NPM), 2009 WL 792067, at *11 (N.D.N.Y. Mar. 23, 2009); Cann v. Astrue, No. 08-4018-SAC, 2009 WL 536565, at *6 (D. Kan. Mar. 3, 2009).   Since the ALJ did not impeach Plaintiff's testimony based on inconsistent statements about drug use, the Commissioner may not defend her decision in this Court on that basis.   Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (citing SEC v. Chenery Corp., 318 U.S. 80, 94 (1943)).

At the administrative hearing, Plaintiff testified that he still was suffering seizures, including four in the past two months, and that after he has a seizure, he's "pretty wiped out for a couple hours."   (Tr. 231-32).   He also testified that he has one to two bad migraines per month, which force him to lie down in a dark, quiet room for up to three hours.   And, he testified that he suffers from "anxious" periods lasting 10-15 minutes about every other day, during which his behavior is "a little erratic."   (Tr. 240-41). Apart from the ALJ's boilerplate finding that Plaintiff's testimony was "not credible to the extent [it was] inconsistent with" Plaintiff's RFC assessment, the ALJ gave no indication as to which of these symptoms he credited in full, which he credited in part, and which he rejected.   Consequently, the ALJ's credibility analysis fails to "make clear to [the reviewing court] the weight the [ALJ] gave to [Plaintiff's] statements," much less provide "specific reasons" for those determinations.   Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *4 (July 2, 1996).   For this reason, I recommend that the case be remanded so that the ALJ can make a proper analysis of Plaintiff's credibility.

Because I conclude that remand is warranted on this basis, I will not address Plaintiff's remaining assignments of error in detail.   But, I note that the ALJ's treatment of the medical opinion evidence suffers from problems similar to the problems with the ALJ's evaluation of Plaintiff's credibility.   The ALJ rejected several statements by Plaintiff's physicians and other health care providers as unsupported by treatment notes, but never explained how the treatment notes differed from the opinions.   On remand, the ALJ would do well to offer more specific reasons for the weight he assigns to each of the medical opinions in the record.

### IV. Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1.   The Commissioner's final decision be **REVERSED and REMANDED** for further proceedings consistent with the findings in this report.

2.   The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

3.   Plaintiff be advised that the deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after Plaintiff receives notice from the Social Security Administration of the amount of past due benefits awarded.

4.   Plaintiff be directed that upon receipt of such notice, he shall promptly email Mr. Rudy and the OGC attorney who prepared the Commissioner's brief to advise that the notice has been received.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.   Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on December 16, 2014.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

> Presiding United States District Judge
> Counsel of Record